**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **RAYSHUN ABERCROMBIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **TOWN OF PINE HILL, ALABAMA,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

## STATEMENT OF JURISDICTION

1. This is an action for damages and equitable relief brought pursuant to 42 U.S.C. § 1983 to enforce Plaintiff Rayshun Abercrombie's rights under 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and the Due Process Clause of the Fourteenth Amendment. Plaintiff brings this action because Defendant Town of Pine Hill treated him differently than similarly situated white employees, paid him less than a less-senior white employee, retaliated against him after he complained about race discrimination and unequal treatment, manufactured and escalated discipline against him, and ultimately terminated him after he spoke out about racial unfairness, unequal municipal pay practices, seniority violations, and misconduct by public officials.

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because this action seeks redress for the deprivation, under color of state law, of rights secured by federal civil-rights statutes and the United States Constitution.

3. This Court has supplemental jurisdiction over Plaintiff's related Alabama-law claim pursuant to 28 U.S.C. § 1367 because that claim arises from the same nucleus of operative facts as the federal claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in Pine Hill, Wilcox County, Alabama, which lies within the Northern Division of the Southern District of Alabama.

**STATEMENT OF THE PARTIES**

5. Plaintiff Rayshun Abercrombie ("Plaintiff" or "Mr. Abercrombie") is a Black male and adult resident of Alabama. At all times relevant to this Complaint, Plaintiff was employed by Defendant and worked in the Town's utility, water, streets, sanitation, public-works, and/or related municipal operations.

6. Defendant Town of Pine Hill, Alabama ("Defendant" or "the Town") is a municipal corporation organized under the laws of the State of Alabama. At all times relevant to this Complaint, the Town acted through its Mayor, Town Council, supervisors, department heads, Town Clerk, agents, employees, and final policymakers.

7. At all times relevant to this Complaint, the Town's Mayor, Town Council, and/or authorized decisionmakers possessed final policymaking authority over municipal employment decisions, including compensation, discipline, suspension, reinstatement, and termination decisions affecting Plaintiff. Alternatively, the Town ratified, approved, adopted, or implemented the challenged employment decisions through its authorized officials and final policymakers.

8. At all times relevant to this Complaint, Defendant acted under color of state law.

## STATEMENT OF FACTS

### A. Mr. Abercrombie was a long-term Town employee with seniority and a clean work history.

9. Mr. Abercrombie worked for the Town of Pine Hill for approximately eight years and five months before his termination on October 30, 2025. During that time, he performed physically demanding municipal work for the Town and remained employed through multiple years of service. Upon information and belief, before the events giving rise to this lawsuit, Mr. Abercrombie had not received unfavorable performance reviews sufficient to justify termination.

10. Mr. Abercrombie was not a probationary or short-term employee. Under the Town's own personnel rules and practices, employees who completed the required probationary period became regular or permanent employees and were entitled to the protections, privileges, and procedures applicable to Town employees.

11. The Town's personnel rules further provided that the Town would employ, compensate, promote, terminate, and carry out other terms and conditions of employment without regard to race. The Town also maintained written rules addressing pay, discipline, grievance procedures, suspensions, demotions, dismissals, and termination procedures.

12. Despite those written policies, the Town treated Mr. Abercrombie differently than similarly situated white employees and retaliated against him when he objected to discriminatory treatment and unequal municipal employment practices.

### B. The Town assigned Mr. Abercrombie menial work that a less-senior white employee was not required to perform.

13. In or around September 2024, Mr. Abercrombie was directed to perform menial and janitorial tasks, including cleaning the shop and/or warehouse, even though he had more seniority than other employees in the relevant department.

14. Upon information and belief, a less-senior white employee was not required to perform the same menial cleaning tasks under the same circumstances.

15. Mr. Abercrombie objected to the unequal treatment. He questioned why he, as the more senior Black employee, was being singled out for the warehouse/shop cleaning assignment while a less-senior white employee was not required to perform the same work.

16. Mr. Abercrombie's objection was reasonable. The issue was not simply that he disliked a particular task. The issue was that the Town was assigning undesirable work in a racially unequal manner, disregarding seniority, and treating a Black employee less favorably than a less-senior white counterpart.

17. Rather than address the concern, Plaintiff's white supervisor, Tim Kelly, reacted with hostility. Kelly treated Mr. Abercrombie's objection as insubordination or "bucking back," escalated the matter to the Mayor, and caused or contributed to disciplinary action against Mr. Abercrombie.

18. On or about September 6, 2024, the Town issued Mr. Abercrombie a written reprimand or warning accusing him of "not doing what I ask" and claiming that he refused to clean the shop. The write-up stated that he was being disciplined because he allegedly refused to perform work. Mr. Abercrombie signed the write-up but disputed the characterization of what occurred.

19. The September 2024 write-up was false, misleading, and pretextual. Mr. Abercrombie did not refuse to work because he was lazy, insubordinate, or unwilling to perform municipal duties. He objected because the assignment reflected discriminatory treatment and because he was being singled out for menial work despite having greater seniority than a white employee who was not treated the same way.

20. The Town sent Mr. Abercrombie home for the day after the September 2024 write-up. That action was materially adverse because it affected his pay, reputation, job security, disciplinary record, and future employment standing.

**C. Mr. Abercrombie filed a written grievance complaining about discrimination.**

21. On or about September 10, 2024, Mr. Abercrombie submitted a written grievance to Mayor Koss Green and Supervisor Tim Kelly. The grievance was expressly titled "RE: Discrimination."

22. In that grievance, Mr. Abercrombie stated that he believed he had been treated unfairly due to discriminatory practices when he was written up and sent home after questioning the warehouse-cleaning assignment. He explained that Tim Kelly had directed him to clean the warehouse, that he questioned whether all employees would be cleaning, and that Kelly became angry and escalated the situation.

23. Mr. Abercrombie further reported that Kelly became enraged, threw items around the warehouse, and that Mr. Abercrombie told Kelly those items were Town property. Mr. Abercrombie then reported that he was called to the Mayor's office, written up, and sent home, even though he was not the person who had acted in a rage.

24. The September 10, 2024 grievance was protected activity. Mr. Abercrombie complained in writing that he had been subjected to discrimination and unequal treatment by Town officials in connection with his municipal employment.

25. The Town knew about this protected activity. The grievance was addressed to the Mayor and Tim Kelly and placed the Town on notice that Mr. Abercrombie was opposing discriminatory treatment.

26. After Mr. Abercrombie complained about discrimination, the Town's treatment of him worsened. The Town and its officials began treating him as a problem employee, scrutinizing him more harshly, threatening his job security, and looking for reasons to discipline him.

**D. The Town paid a less-senior white employee more than Mr. Abercrombie.**

27. In or around August or September 2025, Mr. Abercrombie learned that a less-senior white employee was being paid more than he was.

28. This pay disparity was not justified by seniority, experience, job duties, or performance. Mr. Abercrombie had more seniority than the white employee, and upon information and belief, the Town's pay practices, customs, and policies recognized seniority as relevant to compensation.

29. The Town's own employee handbook provided that salaries were regulated by the Town Council and that increases and adjustments in pay required authorization and approval. The Town therefore could not plausibly characterize pay disparities as random accidents or unauthorized side arrangements. Municipal pay decisions were matters of Town policy, Town practice, and Town approval.

30. The pay disparity mattered. It showed that the Town was not merely assigning Mr. Abercrombie less desirable work. It was also compensating him less favorably than a less-senior white employee.

31. Mr. Abercrombie complained about the pay disparity. He raised the issue with Town decisionmakers and/or at a Town meeting involving the Mayor, Council members, and other public officials. He asked why a less-senior white employee was being paid more than him.

32. Mr. Abercrombie's complaint about the racially unequal pay disparity was protected activity under § 1981. It was also speech on a matter of public concern because it involved racial discrimination, public payroll practices, seniority rules, and the fair administration of municipal funds.

33. The Town could not provide a legitimate explanation for the disparity. Upon information and belief, when Mr. Abercrombie questioned the unequal pay, Town officials were unable or unwilling to give a non-discriminatory reason for paying a less-senior white employee more than a more-senior Black employee.

**E. After Mr. Abercrombie complained, the Town intensified its retaliation and papered his file.**

34. Shortly after Mr. Abercrombie raised race discrimination, seniority, and pay-disparity concerns, the Town intensified its scrutiny of him.

35. Upon information and belief, the Town searched for reasons to write him up, made comments suggesting his job was not secure, and attempted to build a disciplinary paper trail that would justify adverse action after the fact.

36. Upon information and belief, after Mr. Abercrombie complained publicly or semi-publicly about racially unequal pay practices, the Town created, inserted, relied upon, or attempted to rely upon disciplinary material in his file that he had never seen before and that did not reflect a legitimate prior disciplinary event.

37. Mr. Abercrombie believes that this disciplinary material was fraudulently or improperly placed in his personnel file to punish him for complaining about discrimination and to create a justification for future adverse action.

38. The timing is significant. Before Mr. Abercrombie complained about discrimination and unequal pay, he had years of service with no comparable record of discipline warranting termination. After he complained, the Town began treating him as disposable.

39. The Town's conduct would deter a reasonable employee from complaining about race discrimination, unequal pay, unfair assignments, and municipal misconduct.

**F. The Town moved quickly to terminate Mr. Abercrombie after he spoke about public misconduct.**

40. In October 2025, Mr. Abercrombie made statements concerning alleged misconduct, corruption, conflicts, or improper financial dealings involving public officials. In substance, he criticized the Mayor as corrupt and questioned whether the Mayor was connected with a relative or another individual in a manner that affected municipal money or decisionmaking.

41. Mr. Abercrombie's statements did not arise from his ordinary job duties as a utility, water, streets, sanitation, or public-works employee. He was not responsible for setting municipal pay policy, auditing public funds, investigating discrimination, policing municipal ethics, or supervising the Mayor and Town Council. He spoke as an employee-citizen affected by, and concerned about, how public officials were exercising public authority.

42. Defendant seized on those statements as the final pretext to do what the Town had been moving toward since Mr. Abercrombie first complained about race discrimination and unequal treatment: terminate him.

43. On or about October 29, 2025, Mr. Abercrombie received a written notice of a disciplinary hearing scheduled for the very next morning, October 30, 2025.

44. The written notice accused Mr. Abercrombie of rude or disrespectful conduct toward a member of the public or co-worker, conduct unbecoming to an employee in the public

service, and "any reason deemed to be in the best interest of the Town." The notice referenced "disrespectful actions towards public officials" and identified termination as the contemplated disciplinary action.

45. The allegations were vague, subjective, and broad. They did not provide meaningful detail sufficient to allow Mr. Abercrombie to prepare a defense, gather witnesses, obtain representation, or respond fully to the charges.

46. Mr. Abercrombie responded in writing on October 29, 2025. He stated that he had not been given reasonable notice before the disciplinary hearing and requested that the hearing be rescheduled. He explained that a period of five to seven working days was appropriate in a matter involving serious allegations of misconduct. He further stated that he took the matter seriously, would prepare the necessary information, and, if permitted, would bring a representative to accompany him.

47. The Town did not provide Mr. Abercrombie a meaningful opportunity to prepare. Instead, the hearing proceeded on October 30, 2025 at approximately 8:07 a.m. at Pine Hill City Hall.

48. On October 30, 2025, Mayor Koss Green Jr. decided to terminate Mr. Abercrombie.

49. The termination decision advised Mr. Abercrombie that if an employee is suspended for more than three days, demoted, or dismissed, the employee has a right to appeal such action in writing within five working days.

50. Mr. Abercrombie timely submitted a written grievance regarding his termination on November 3, 2025.

51. In his termination grievance, Mr. Abercrombie explained that he had worked for the Town for approximately eight years and five months, had not received an unfavorable performance review, had been terminated without the required number of official notices or infractions, and was requesting an appeal for wrongful termination and enough time to seek legal representation.

52. Upon information and belief, the Town Council later voted to reinstate Mr. Abercrombie. However, Mayor Green exercised or claimed executive authority to block, override, or prevent that reinstatement.

53. The Town's refusal to reinstate Mr. Abercrombie, despite a Council vote to do so, further confirms that the challenged employment actions were not ordinary discipline. They were the product of retaliation, discrimination, and abuse of municipal authority.

**G. The Town's stated reasons were pretextual.**

54. The Town's stated reasons for disciplining and terminating Mr. Abercrombie were false, incomplete, exaggerated, shifting, and pretextual.

55. The Town did not terminate Mr. Abercrombie because of a neutral application of workplace rules. The Town terminated him after he complained about discrimination, complained about unequal pay, questioned municipal decisionmakers, and spoke about corruption or misconduct involving public officials.

56. The Town's actions were also inconsistent with its own personnel rules and practices. The Town's handbook recognized anti-discrimination protections, discipline procedures, grievance procedures, appeal procedures, and hearing rights. The Town ignored or manipulated those procedures when dealing with Mr. Abercrombie.

57. The Town treated Mr. Abercrombie less favorably than similarly situated white employees, including a less-senior white employee who was not assigned the same menial work, was paid more, and was not disciplined or terminated in the same manner.

58. The Town's conduct caused Mr. Abercrombie economic harm, loss of employment, loss of wages, loss of benefits, damage to his reputation, emotional distress, humiliation, embarrassment, anxiety, and other damages.

## COUNT ONE
## 42 U.S.C. § 1983 - RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
## Against Defendant Town of Pine Hill

59. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

60. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. In the employment context, the right to make and enforce contracts includes the performance, modification, termination, and enjoyment of all benefits, privileges, terms, and conditions of the employment relationship.

61. Because Defendant is a municipal actor, Plaintiff brings this claim through 42 U.S.C. § 1983 to enforce his § 1981 rights against the Town.

62. Mr. Abercrombie is Black and therefore belongs to a protected class.

63. Mr. Abercrombie was qualified for his position and performed his municipal work for the Town for approximately eight years and five months.

64. Defendant discriminated against Mr. Abercrombie because of race with respect to the terms, conditions, privileges, benefits, compensation, discipline, and termination of his employment.

65. Defendant treated Mr. Abercrombie less favorably than similarly situated white employees by assigning him menial work that a less-senior white employee was not required to perform, paying him less than a less-senior white employee, disciplining him more harshly, manufacturing or relying upon pretextual write-ups, threatening his job security, terminating him, and refusing to reinstate him.

66. Race was a but-for cause of the unequal terms and conditions imposed on Mr. Abercrombie, including the menial assignments, pay disparity, discriminatory discipline, termination, and refusal to reinstate.

67. The discriminatory acts were committed by Town officials with final policymaking authority over the challenged employment decisions, or were ratified, approved, adopted, or implemented by Town final policymakers.

68. As a direct and proximate result of Defendant's race discrimination, Mr. Abercrombie suffered lost wages, lost benefits, loss of employment, loss of seniority, reputational harm, emotional distress, humiliation, inconvenience, and other damages.

**COUNT TWO**
**42 U.S.C. § 1983 - RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**
**Against Defendant Town of Pine Hill**

69. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

70. Mr. Abercrombie engaged in protected activity under § 1981 by opposing race discrimination, objecting to racially unequal work assignments, submitting a written grievance titled "Discrimination," complaining that a less-senior white employee was being treated more favorably, and questioning why a less-senior white employee was being paid more than him.

71. Defendant knew about Mr. Abercrombie's protected activity because he directed his September 10, 2024 grievance to the Mayor and supervisor and later raised his pay-disparity concerns to Town decisionmakers.

72. After Mr. Abercrombie engaged in protected activity, Defendant subjected him to materially adverse actions, including heightened scrutiny, threats, write-ups, being sent home, creation or reliance upon disciplinary material in his file, adverse treatment affecting pay and job security, termination, and refusal to reinstate.

73. The causal connection is strong. The adverse treatment began after Mr. Abercrombie complained about discrimination and escalated after he questioned racially unequal pay and seniority practices. Defendant's decisionmakers were aware of his protected complaints and then moved to build a disciplinary record and terminate him.

74. Defendant's stated reasons for disciplining and terminating Mr. Abercrombie were pretextual. Defendant did not take the same actions against similarly situated white employees, did not fairly apply its rules, and did not provide a legitimate explanation for paying a less-senior white employee more than Mr. Abercrombie.

75. But for Mr. Abercrombie's protected opposition to race discrimination and racially unequal treatment, Defendant would not have subjected him to the materially adverse actions alleged herein.

76. The retaliatory acts were committed by Town officials with final policymaking authority over the challenged employment decisions, or were ratified, approved, adopted, or implemented by Town final policymakers.

77. As a direct and proximate result of Defendant's retaliation, Mr. Abercrombie suffered lost wages, lost benefits, loss of employment, reputational harm, emotional distress, humiliation, inconvenience, and other damages.

**COUNT THREE**
**42 U.S.C. § 1983 - RACE DISCRIMINATION / EQUAL PROTECTION**
**Fourteenth Amendment**
**Against Defendant Town of Pine Hill**

78. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

79. The Equal Protection Clause of the Fourteenth Amendment prohibited Defendant from intentionally treating Mr. Abercrombie differently than similarly situated white employees because of race.

80. Defendant violated Mr. Abercrombie's equal-protection rights by treating him less favorably than similarly situated white employees with respect to work assignments, pay, discipline, job security, termination, and reinstatement.

81. Defendant intentionally singled out Mr. Abercrombie, a Black employee, for menial work, lower pay, harsher discipline, pretextual write-ups, termination, and refusal to reinstate while treating similarly situated white employees more favorably.

82. Defendant's conduct was not rational, neutral, or accidental. It reflected intentional race discrimination and racially unequal treatment by municipal officials acting under color of state law.

83. The constitutional violations were caused by decisions of Town final policymakers, including the Mayor and/or Town Council, and/or by actions ratified, approved, adopted, or implemented by Town final policymakers.

84. As a direct and proximate result of Defendant's Equal Protection violation, Mr. Abercrombie suffered damages.

**COUNT FOUR**
**42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION**
**Against Defendant Town of Pine Hill**

85. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

86. Mr. Abercrombie engaged in speech protected by the First Amendment when he spoke as a citizen on matters of public concern, including race discrimination within municipal employment, racially unequal pay practices, seniority violations affecting public payroll decisions, misuse of public authority, and alleged corruption or misconduct by public officials.

87. Mr. Abercrombie's speech was not made pursuant to his ordinary job duties as a Town utility, water, sanitation, streets, or public-works employee. It was not his job to set Town pay policy, investigate racial discrimination, police municipal ethics, regulate public payroll, or supervise the Mayor and Town Council. He spoke as an employee-citizen affected by and concerned about how the Town was using public authority and public funds.

88. Mr. Abercrombie's speech addressed matters of public concern. Racial discrimination by a municipal employer, unequal municipal pay practices, manipulation of seniority rules, retaliation against employees who complain, and corruption or conflicts involving public officials are matters of legitimate concern to the public.

89. Defendant took adverse employment actions against Mr. Abercrombie after and because of his protected speech. Those actions included discipline, threats, papering his file, termination, and refusal to reinstate.

90. Mr. Abercrombie's protected speech was a substantial or motivating factor in Defendant's adverse employment actions.

91. Defendant lacked an adequate justification for treating Mr. Abercrombie differently from any other member of the public based on his speech. To the extent Defendant contends that Mr. Abercrombie was terminated for the manner of his speech, that contention is pretextual or, at minimum, does not justify the full course of retaliatory conduct that began before the final termination event.

92. Defendant's conduct would deter a person of ordinary firmness from speaking about race discrimination, unequal public pay practices, and public corruption.

93. The First Amendment violation was caused by decisions of Town final policymakers, including the Mayor and/or Town Council, and/or by actions ratified, approved, adopted, or implemented by Town final policymakers.

94. As a direct and proximate result of Defendant's First Amendment retaliation, Mr. Abercrombie suffered damages.

**COUNT FIVE**
**42 U.S.C. § 1983 - PROCEDURAL DUE PROCESS**
**Fourteenth Amendment**
**Against Defendant Town of Pine Hill**

95. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

96. Mr. Abercrombie had a protected property interest in his continued employment with the Town. He had worked for the Town for approximately eight years and five months, had completed any probationary period, and was entitled to the protections, procedures, and

expectations applicable to regular or permanent Town employees under the Town's personnel rules, handbook, customs, and practices.

97. The Town's personnel rules and practices limited the Town's discretion to terminate regular employees and provided specific procedures for discipline, dismissal, hearings, grievances, and appeals. Those rules and practices created a legitimate expectation of continued employment absent sufficient cause and constitutionally adequate process.

98. Defendant deprived Mr. Abercrombie of that protected property interest by terminating him.

99. Defendant failed to provide constitutionally adequate pre-termination process. Mr. Abercrombie received notice on or about October 29, 2025 of a disciplinary hearing scheduled for the next morning. The allegations were vague, conclusory, and subjective. Mr. Abercrombie requested a reasonable continuance of five to seven working days so he could prepare, gather information, and obtain representation. Defendant refused or failed to provide a meaningful opportunity to prepare.

100. The October 30, 2025 hearing was not a meaningful pre-termination opportunity to respond. Defendant had already rushed the process, failed to provide adequate factual detail, failed to allow reasonable preparation, and proceeded despite Mr. Abercrombie's written objection.

101. Defendant also failed to provide adequate post-termination process. Mr. Abercrombie timely filed a grievance and appeal regarding his termination. Upon information and belief, the Town Council voted to reinstate him, but the Mayor blocked, overrode, or refused to implement the Council's reinstatement decision.

102. Defendant's process was not neutral, meaningful, or adequate. It was a mechanism for ratifying a decision that had already been made.

103. As a direct and proximate result of Defendant's denial of procedural due process, Mr. Abercrombie suffered lost wages, lost benefits, loss of employment, emotional distress, reputational harm, and other damages.

## COUNT SIX
## BREACH OF EMPLOYMENT CONTRACT
## Alabama Law - Pled in the Alternative
## Against Defendant Town of Pine Hill

104. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

105. Defendant maintained written personnel rules, policies, and procedures governing employment, pay, discipline, hearings, grievances, appeals, and termination.

106. Those policies were communicated to Town employees, including Mr. Abercrombie, and were intended to guide the employment relationship between the Town and its employees.

107. Mr. Abercrombie accepted and continued employment with the Town under those policies and performed work for the Town for approximately eight years and five months.

108. Defendant breached its employment policies, personnel rules, and/or contractual obligations by failing to follow its own rules governing discipline, pay, seniority, notice, hearing procedures, grievance procedures, appeal rights, and termination.

109. Defendant further breached its obligations by terminating Mr. Abercrombie without sufficient cause, without adequate notice, without a meaningful opportunity to respond,

without fair application of progressive discipline or comparable procedures, and without honoring the Town Council's reinstatement vote.

110. As a direct and proximate result of Defendant's breach, Mr. Abercrombie suffered lost wages, lost benefits, loss of employment, emotional distress, and other damages.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff Rayshun Abercrombie respectfully requests that this Court assume jurisdiction over this action and, after trial, enter judgment in his favor and against Defendant Town of Pine Hill, Alabama, and award the following relief:

A. A declaration that Defendant violated Plaintiff's rights under 42 U.S.C. § 1981, the Equal Protection Clause, the First Amendment, the Due Process Clause, and Alabama law;

B. Back pay, front pay, lost benefits, lost retirement benefits or credits, lost seniority, and all other economic damages;

C. Compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, reputational harm, and other non-economic injuries;

D. Equitable relief, including reinstatement to his former position or a comparable position, restoration of seniority and benefits, removal of false or retaliatory disciplinary materials from his personnel file, correction of employment records, and any other equitable relief necessary to make Plaintiff whole;

E. Prejudgment and post-judgment interest;

F. Reasonable attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and all other applicable law; and

G. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by struck jury on all issues so triable.

Respectfully submitted,

*/s/ Nicki L. Lawsen*

Sidney M. Jackson
Samuel Fisher
Nicki L. Lawsen
**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com